## Sun Oil Company v. Schofield et al.

*John Blair Moffett* and *Arnold M. Blumberg*, for plaintiff.

*Augustus Trask Ashton*, city solicitor, *Charles H. Hassert*, assistant city solicitor, *George Wharton Pepper* and *Theodore S. Paul*, for defendants.

ALESSANDRONI, J., May 19, 1932.—The plaintiff filed a bill in equity setting forth that it had purchased premises situate at No. 4314 Old York Road, Philadelphia, on August 26, 1930, upon the express condition that if the purchaser could not obtain the necessary permits to erect and operate a gasoline filling station the agreement would be null and void; that the permit was granted and the purchase price paid; that the plaintiff demolished the existing two-story dwelling, and when the demolition was almost completed, the plaintiff was notified by the acting chief of the Bureau of Building Inspection to suspend work until certain questions had been decided by the Fairmount Park Commission and the bureau; that on February 11, 1931, the permit was revoked; that the revocation of the permit was wrongful and unlawful, and the bill concludes with prayers that the defendants and their successors be restrained from interfering with the construction of the gasoline filling station. No answer was filed by the director of public safety or the acting chief of the Bureau of Building Inspection, but an answer was filed on behalf of the Fairmount Park Commissioners, setting forth that the name of Hunting Park Avenue extension, upon which the plaintiff's property abuts, has been changed to Roosevelt Boulevard since July 2, 1925, and under the ordinances existing in the City of Philadelphia no building can be erected thereon for commercial purposes. An order for a decree pro confesso as to the director of public safety and the acting chief of the Bureau of

Building Inspection has been filed of record. Upon consideration of the bill and answer, the stipulation filed of record and the testimony produced, the court makes the following

*Findings of fact*

1. The plaintiff is a New Jersey corporation authorized to do business in the State of Pennsylvania.

2. The defendants are the Director of Public Safety of the City of Philadelphia, the acting chief of the Bureau of Building Inspection and the members of the Fairmount Park Commission.

3. On August 26, 1930, Joseph A. Herzog was the owner in fee simple of premises No. 4314 Old York Road, Philadelphia, more particularly described in the bill of complaint.

4. On July 2, 1925, the name of Hunting Park Avenue extension, from Fifteenth Street to a point east of Old York Road, was changed to "Roosevelt Boulevard."

5. On January 30, 1923, the City of Philadelphia by ordinance prohibited the erection in the future of buildings for use as a stable, public garage, manufacturing purposes, etc., within 200 feet of the boundary of Cobbs Creek Park and the Roosevelt Boulevard, and a penalty was prescribed for a violation thereof. By ordinance approved July 10, 1928, the Ordinance of January 30, 1923, was amended by inserting after the word "manufacturing," in section one thereof, the words "or commercial."

6. Premises No. 4314 Old York Road are more than 200 feet from the boundary line of Roosevelt Boulevard as officially known on January 30, 1923.

7. On August 26, 1930, Joseph A. Herzog, the owner of the premises in question, entered into an agreement to sell the premises to Maurice L. Webster, acting on behalf of the complainant, for the sum of $20,000, conditioned that the agreement be deemed null and void if the purchaser could not secure permits to erect and operate a drive-in gasoline filling station.

8. On or about November 18, 1930, an application was made to the Bureau of Building Inspection for a permit to demolish a two-story building erected on the premises and to erect and construct a one-story brick gasoline service and filling station, with driveways on Hunting Park Avenue extension and Old York Road. The application was accompanied by a plan showing the exact location of the property, and was approved by the Fire Marshal of Philadelphia and a permit issued by the Bureau of Building Inspection, under date of November 20, 1930.

9. Subsequently, settlement was made for the premises in question and title obtained on or about December 9, 1930. The plaintiff proceeded to demolish the two-story dwelling then existing, and on or about February 9, 1931, after the demolition was practically completed, Charles A. Flannigan, Acting Chief of the Bureau of Building Inspection, notified the plaintiff's agent that the construction of the filling station should be suspended until certain questions between the bureau and the Fairmount Park Commission had been determined.

10. On or about February 11, 1931, Charles A. Flannigan notified plaintiff's agent that, in view of the information submitted by the Fairmount Park Commission, it became necessary to revoke the permit issued.

11. An application for a public service station at Oxford Avenue, 250 feet north of Sanger Avenue, dated August 15, 1929, was approved and a service station erected pursuant thereto. Another was erected on Oxford Avenue, 280 feet north of Sanger Avenue, by application dated August 15, 1929. Both these service stations abut on Roosevelt Boulevard. Another was erected on Whitaker

Avenue and Roosevelt Boulevard pursuant to an application dated August 23, 1929.

12. The value of the plot of ground located at No. 4314 Old York Road for residential purposes is $4700, and its value for commercial purposes as a gasoline station is $14,800.

13. Hunting Park Avenue extension, from Fifteenth Street to Broad, is distinctly commercial in character, and on the southeast corner of Broad Street and Hunting Park Avenue extension stands a large gasoline filling station.

## Discussion

It is uncontradicted that the plaintiff purchased premises No. 4314 Old York Road solely because a permit for the erection of a gasoline filling station was granted by the proper authorities. The primary question raised is one of construction of the Ordinances of 1923, 1925 and 1928. The Ordinance of January 30, 1923, is a zoning ordinance and prohibits the erection of buildings within 200 feet of the boundary line of Roosevelt Boulevard for use as a stable, garage or for manufacturing purposes or display of billboards or roof signs. Roosevelt Boulevard, as constituted on January 30, 1923, did not include Hunting Park Avenue extension, upon which the plaintiff's premises abut. It was not until July 2, 1925, that the name of Hunting Park Avenue, from Fifteenth Street to a point east of Old York Road, was changed to Roosevelt Boulevard. The ordinance, therefore, must be construed as applying to Roosevelt Boulevard as constituted on the date of its enactment. It is significant that the Ordinance of January 30, 1923, does not state that it applies to any additions or extensions of the Roosevelt Boulevard, and we, therefore, are constrained to conclude that the intention of the city council was to apply the zoning ordinance to the Roosevelt Boulevard as it then existed. In arriving at this conclusion, we have had the benefit of the opinion of the learned President Judge of Common Pleas Court No. 2 in the case of Humphreys v. Schofield et al., 14 D. & C. 127. A similar question was there raised, and the court held that, "in short, where an ordinance which greatly limits the use of property by its owners and which provides a penalty for its nonobservance, contains the phrase 'Roosevelt Boulevard,' that term must be construed as being limited to or consisting of the avenue placed under such designation on the city plan by order of city council and referred to in numerous other ordinances of city council existing at the time of the passage of the ordinance in question." The Zoning Ordinance of 1923 is penal in its nature and should be strictly construed. The amendment of July 10, 1928, makes no change in the original ordinance except that it adds commercial buildings to those prohibited in the original ordinance. It, therefore, does not change the fact that the zoning ordinance was intended to apply only to Roosevelt Boulevard as it existed on January 30, 1923. The city council must have intended to consider the zoning of extensions and additions as they were created and according to their character.

It is a primary rule of statutory construction that where two interpretations are possible, one of which is sustainable and the other not sustainable, it is presumed that the legislative body intended to effect the legal purpose. The Zoning Ordinance of January 30, 1923, as amended by the Ordinance of July 10, 1928, would be illegal and invalid if we were to apply the reasoning of the Fairmount Park Commission. The evidence was clear and uncontradicted that Hunting Park Avenue extension between Fifteenth and Broad Streets is wholly commercial, and if we were to apply the zoning ordinance to that locality so as to prohibit the erection in the future in a completely com-

mercial district of commercial buildings, we would be effecting a monopoly on the part of the other property owners and would be enforcing an unreasonable and discriminatory act which principles of equity and justice prohibit. See Coane v. City of Philadelphia et al., 16 D. & C. 159, and the concurring opinion in Ward's Appeal, 289 Pa. 458, 470, in which Kephart, J., held that, "in ascertaining the public good by which the particular application of a zoning ordinance is to be sustained, care should also be taken that we do not permit such an instrument to become one of oppression in favor of a selected few or one whereby favoritism may be practiced without hindrance, and that it does not become a regulation of business as such, not through prices or rates, as in the case of service companies, but in a manner more closely resembling the legislative regulations of professions, trades and occupations such as medicine, engineering and mining." We, therefore, are of the opinion that the Zoning Ordinance of January 30, 1923, as amended by the Ordinance of July 10, 1928, does not apply to the Hunting Park Avenue extension and the premises in question.

In Gilfillan's Permit, 291 Pa. 358, 361, the court stated: "But, inasmuch as the natural effect of ordinances of this description is to limit private rights in the interest of the public welfare, the exercise of the power must be carefully guarded and permitted only in cases where the conditions and circumstances are such as to show the effect of the ordinance to be a reasonable and proper exercise of police power." In Taylor v. Haverford Township, 299 Pa. 402, 414, our Supreme Court indicated that when a street is already so uniformly used for business purposes as to have established its character in that regard, a zoning ordinance restricting its use to residences is not valid because it "will almost inevitably lead to such unreasonable destruction of values as to be confiscatory."

The argument of the plaintiff that other violations occur and that the Fairmount Park Commission is discriminating against the plaintiff has no legal justification. As stated in Valicenti's Appeal, 298 Pa. 276, 283: "Nor is there force in the suggestion that in six other instances in the residential district designated as U 1, owners had failed to strictly obey the provisions of the zoning ordinance. A similar suggestion was thus answered by Mr. Justice Schaffer, in New Castle City v. Withers, supra [291 Pa. 216], at page 222: 'The fourth position assumed by appellant, that the city cannot enforce part of the act [regulating plumbing] because it does not enforce other parts, is another quite novel proposition, that the violator of a law in one respect has a standing to challenge its enforcement against him because it is not enforced in all respects and against everybody.' "

Another equitable consideration of merit appears in this case. At the time the plaintiff arranged to purchase the property, the agreement for the sale was conditioned upon the probability of obtaining the permit for the erection of a gasoline filling station. An application was made setting forth the exact location of this particular plot of ground and a permit was granted. Pursuant thereto, the plaintiff purchased the property, and it was only after the lapse of approximately two and a half months, during which time the plaintiff completely demolished the existing building, that notice was given of the revocation of the permit. The plaintiff in the meantime had purchased the property in reliance upon the permit issued at a price which contemplated its use for commercial purposes and far in excess of its value for residential purposes. To permit a revocation of the permit would cause the plaintiff considerable loss and damage and would be grossly unjust and unequitable. As stated in Herskovits v. Irwin, 299 Pa. 155, 161: "A permit having been issued

and work done thereunder, a right was created in the applicants as to which they were entitled to protection; the subsequent attempt to revoke the permit could not abrogate this right."

No answer was filed on behalf of the director of public safety or the acting chief of the Bureau of Building Inspection and an order for a decree pro confesso has been filed by the plaintiffs. The Fairmount Park Commission constitutes the sole party objecting to the use of the plaintiff's premises for commercial purposes. Its standing to question the propriety of the issuance of this permit is exceedingly doubtful. The same question was considered in the case of Humphreys v. Schofield et al., supra, wherein the court held that the provision of the Ordinance of January 30, 1923, providing that no buildings should be erected within the prescribed territory until the plans had been approved by the Commissioners of Fairmount Park was unconstitutional, because no greater powers than care and management of the boulevard can properly be entrusted to the Fairmount Park Commission and because the power delegated in the ordinance to the Fairmount Park Commission was vague and arbitrary and not based upon definite prescribed standards. The court stated (page 132) : "In the second place, even if such power could be granted to the Commissioners of Fairmount Park, or to any other body, it could not be done in the vague and arbitrary manner provided for by the ordinance. The ordinance does not lay down any rules or regulations whatever upon which the discretion of the commissioners is to be based. It gives them the absolute right to say whether or not a building shall be erected or altered and an unlimited discretion as to the design and plans of the building and its location on the owner's lot of ground. Such a grant of power is without precedent in law." A similar conclusion was reached in Taylor v. Moore, 303 Pa. 469, 479. The approval of the Fairmount Park Commission, therefore, is not necessary, for that provision of the ordinance is invalid and unconstitutional. No answer having been filed by the other parties, the bill should be sustained and a decree entered in favor of the complainant.

The plaintiff also contends that the Zoning Ordinances of January 30, 1923, and July 10, 1928, are invalid, but, as we have pointed out, the only part of these ordinances which is invalid is that regarding the absolute authority of the Fairmount Park Commissioners to approve or disapprove of buildings to be erected. The zoning ordinance in question is reasonable and has been sustained: Humphreys v. Schofield et al., supra. Also, see Ward's Appeal, supra, and cases therein cited.

## Conclusions of law

1. The Zoning Ordinance of January 30, 1923, as amended by the Ordinance of July 10, 1928, applies only to the Roosevelt Boulevard as it was constituted on January 30, 1923, and does not apply to the Hunting Park Avenue extension, which was not named "Roosevelt Boulevard" until July 2, 1925.

2. The Ordinance of January 30, 1923, as amended by the Ordinance of July 10, 1928, does not apply to the premises owned by the complainant situate at No. 4314 Old York Road in the City of Philadelphia.

3. That part of the Ordinance of January 30, 1923, providing that no building shall be erected or altered until the plans and buildings shall be approved by the Commissioners of Fairmount Park is invalid.

4. The defendants and their successors should be enjoined and restrained from interfering with the construction or erection of a one-story brick gasoline service or filling station upon premises No. 4314 Old York Road, and the Director of Public Safety and Chief of the Bureau of Building Inspection of

318

the City of Philadelphia should be restrained from revoking permit No. 6768, dated November 20, 1930.

5. Costs to be paid by the defendants.

### Decree nisi

And now, to wit, May 19, 1932, it is ordered, adjudged and decreed that the Director of Public Safety and Chief of the Bureau of Building Inspection of the City of Philadelphia be and hereby are enjoined and restrained from revoking building permit No. 6768, dated November 20, 1930, for the erection of a one-story gasoline station on premises No. 4314 Old York Road, Philadelphia; that the defendants and their successors in office be and hereby are enjoined and restrained from interfering with the construction of a one-story gasoline service station at No. 4314 Old York Road, Philadelphia, in accordance with the plans submitted with the application and building permit dated November 20, 1930; and that the defendants pay the costs of this proceeding.